# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT ALAN POWER** | **CIVIL ACTION** |
| **versus** | **NO. 12-567** |
| **BURL CAIN, WARDEN, L.S.P.** | **SECTION: "F" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Robert Alan Power, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On September 12, 2007, he pleaded guilty to two counts of attempted first degree murder, one count of unauthorized use of a motor vehicle, and one count of

aggravated escape.[1] On November 30, 2007, he was sentenced on each of the counts of attempted first degree murder to a concurrent term of fifty years imprisonment without benefit of probation, parole, or suspension of sentence. He was sentenced on the conviction for unauthorized use of a motor vehicle to a concurrent term of ten years imprisonment. Lastly, he was sentenced on the conviction for aggravated escape to a consecutive term of ten years imprisonment.[2]

On or about December 29, 2007, petitioner filed a motion to reconsider sentence with the state district court.[3] That motion was denied on March 25, 2008.[4]

On or about August 4, 2008, petitioner filed an application for post-conviction relief with the state district court.[5] The court ordered that he resubmit the application on the state's uniform application form,[6] and he did so on or about October 16, 2008.[7] The application was then denied on February 2, 2009;[8] however, on August 17, 2009, the Louisiana First Circuit Court of Appeal granted petitioner's related writ application and remanded the matter to the state district

---

[1] State Rec., Vol. II of III, transcript of September 12, 2007.

[2] State Rec., Vol. III of III, transcript of November 30, 2007, pp. 40-41; State Rec., Vol. II of III, Sentence.

[3] State Rec., Vol. II of III.

[4] State Rec., Vol. II of III, Denial of Motion to Reconsider Sentence.

[5] State Rec., Vol. II of III.

[6] State Rec., Vol. II of III, Order dated September 22, 2008.

[7] State Rec., Vol. II of III.

[8] State Rec., Vol. II of III, Order dated February 2, 2009.

court for further proceedings.⁹ The district court held an evidentiary hearing on March 26, 2010, and thereafter again denied relief.¹⁰ Petitioner's related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on October 26, 2010,¹¹ and by the Louisiana Supreme Court on December 2, 2011.¹²

On February 13, 2012, petitioner filed the instant application for federal *habeas corpus* relief. In support of his federal application, he asserts the following claims:

1. Petitioner was not advised that his guilty plea would preclude an appeal of his sentences and, had he been so advised, he would have pleaded "not guilty'; and

2. Petitioner received ineffective assistance of counsel.

Petitioner alleges that he exhausted his state court remedies with respect to those claims,¹³ and the state does not contest that allegation. The state further concedes that this federal application was timely filed.¹⁴ Accordingly, the Court will address the merits of petitioner's claims.

---

⁹ State v. Power, No. 2009 KW 0620 (La. App. 1st Cir. Aug. 17, 2009); State Rec., Vol. II of III.

¹⁰ State Rec., Vol. III of III, transcript of March 26, 2010; State Rec., Vol. III of III, Written Reasons for Judgment dated May 27, 2010.

¹¹ State v. Power, No. 2010 KW 1370 (La. App. 1st Cir. Oct. 26, 2010); State Rec., Vol. III of III.

¹² State *ex rel.* Power v. State, 76 So.3d 1162 (La. 2011) (No. 2010-KH-2708); State Rec., Vol. III of III.

¹³ Rec. Doc. 2, pp. 6 and 8.

¹⁴ Rec. Doc. 8, p. 5.

I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an

incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II. Petitioner's Claims

### A. Failure to Advise/Invalid Plea

Petitioner pleaded guilty pursuant to a plea agreement set forth in the record at the time of his plea[15] and he was sentenced in conformity therewith.[16] Therefore, pursuant to Louisiana

---

[15] State Rec., Vol. II of III, transcript of September 12, 2007, pp. 2-4.

[16] State Rec., Vol. III of III, transcript of November 30, 2007, pp. 40-41.

law, he was barred from appealing his sentences. La.C.Cr.P. art. 881.2(A)(2) ("The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea."). However, petitioner complains that he was not advised of that legal ramification of his plea and, further, he claims that had he been so advised, he would have pleaded "not guilty."

To the extent that petitioner is claiming that his rights were violated by the trial court's failure to notify him that he had no right to appeal his sentences if he pleaded guilty, that claim has no merit. Clearly, Louisiana law does not require such an advisement. See, e.g., State v. Senterfitt, 771 So.2d 198, 202 (La. App. 3rd Cir. 2000) ("[W]e hold that the trial court was not required to advise [the defendant] that he could not appeal his sentence nor was he required to obtain a waiver of his right to appeal."). Moreover, in any event, federal *habeas corpus* relief may be granted only to remedy violations of the federal law, see, e.g., Engle v. Isaac, 456 U.S. 107, 119 (1983), and such relief is not warranted unless a petitioner can show that the state court's decision rejecting his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphasis added). In this case, petitioner does not identify a United States Supreme Court ruling which holds that a judge, as a matter of federal law, must advise a defendant that he has no right to appeal his sentence if he pleads guilty, and this Court is aware of no such ruling.[17] Where, as here,

---

[17] On the contrary, the United States Supreme Court has held that there are three rights which cannot be presumed waived from a silent record: (1) "the privilege against compulsory self-incrimination"; (2) "the right to trial by jury"; and (3) "the right to confront one's accusers." Boykin v. Alabama, 395 U.S. 238, 243 (1969). The right to appeal is not among that number.

the jurisprudence of the United States Supreme Court does not clearly support a petitioner's claim, it cannot be said that a state court ruling denying the claim impermissibly ran afoul of "clearly established Federal law" for purposes of § 2254(d)(1). See Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law. Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized."); Gilson v. Leblanc, Civ. Action No. 08-4833, 2009 WL 2046166, at *3 (E.D. La. July 14, 2009).

To the extent that petitioner is claiming that his ignorance on this point of state law rendered his guilty plea *invalid*, that claim fares no better. "It is beyond dispute that a guilty plea must be both knowing and voluntary." Parke v. Raley, 506 U.S. 20, 28 (1992). However, when a *habeas* petitioner challenges the validity of his plea, he carries the burden of proving his plea was not in fact knowing and voluntary. See, e.g., Hines v. Louisiana, 102 F. Supp. 2d 690, 694 (E.D. La. 2000). For the following reasons, it is clear that he has not met his burden of proof in this case.

For a plea to be considered knowing, "the defendant must have a full understanding of what the plea connotes and of its consequence." United States v. Hernandez, 234 F.3d 252, 255 (5th Cir. 2000) (quotation marks omitted). That said, the United States Fifth Circuit Court of Appeals has held that "[t]he defendant need only understand the direct consequences of the plea; he need not be made aware every consequence that, absent a plea of guilty, would not otherwise occur." Id. With respect to sentencing issues, a matter is a "direct consequence" of the plea only if it is related to either the length or nature of the sentence. See id. at 256-57. Therefore, a defendant is fully aware of his plea's "direct consequences" as long as he understands the length of the sentence

he might possibly receive. Hobbs v. Blackburn, 752 F.2d 1079, 1082 (5th Cir. 1985). Other matters, no matter how unpalatable, simply are not considered "direct consequences." Hernandez, 234 F.3d at 256. Here, petitioner clearly understood the length of the sentences he faced, and this Court has found no support for the contention that his plea was unknowingly entered simply because he was not told that he would be precluded from challenging the length of the sentences to which he agreed in the plea bargain.

A plea must also be "voluntary." The terms "knowing" and "voluntary" "are frequently used interchangeably, although, strictly speaking, the terms embody different concepts." Hernandez, 234 F.3d at 254 n.3. Thus, while a "knowing" plea is one where the defendant is aware of the direct consequences of his plea, a "voluntary" plea is one not induced "by threats, misrepresentation, unfulfilled promises, or promises of an improper nature." Id.

In the instant case, petitioner alleges that his plea was involuntary because it was based on misrepresentations by defense counsel that an appeal could be taken to challenge the sentences despite the entry of a guilty plea. At the state post-conviction evidentiary hearing, defense counsel's testimony seemed to support the allegation that there were discussions in which he indicated that an appeal was a possible (albeit probably ultimately futile) option.[18] That is arguably problematic, because "when a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea." McKenzie v. Wainwright, 632 F.2d 649, 651 (5th Cir. 1980).

---

[18] See, e.g., State Rec., Vol. III of III, transcript of March 26, 2010, pp. 7-11, 13-14, 17, and 21.

Nevertheless, "[a] prisoner claiming counsel's ineffectiveness rendered his guilty plea involuntary must show: 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Fernandez, 317 Fed. App'x 388, 389 (5th Cir. 2009) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In the instant case, the Court finds that, despite petitioner's allegation to the contrary, there is no reasonable probability that he would have insisted on going to trial for the following reasons.

First, there was no real question that petitioner was in fact the perpetrator of these crimes, and he faced a daunting set of facts if he proceeded to trial. As the trial judge explained in his reasons for denying post-conviction relief:

> The charges arose from an incident where defendant helped his cousin steal a vehicle from a convenience store on La Hwy 1 in Lafourche Parish. The cousin was driving the stolen vehicle while Power was driving another vehicle. When the cousin was stopped by two (2) Lafourche Parish Sheriff's deputies to investigate the stolen vehicle, Power approached the scene and shot both deputies with a 20 gauge shot gun at point blank range. He then helped his cousin escape resulting in a man-hunt in the local community which ended with their later capture.[19]

Second, petitioner benefitted greatly from the plea agreement. By bill of information, he had been charged with two counts of attempted first degree murder, one count of unauthorized use of a motor vehicle, one count illegal possession of stolen things with a value of over $500 or more, and one count of aggravated escape. Those crimes carried substantial potential penalties: attempted first degree murder was punishable by up to fifty years in prison; unauthorized use of a motor vehicle was punishable by up to ten years in prison; illegal possession of stolen things with

---

[19] State Rec., Vol. III of III, Written Reasons for Judgment dated May 27, 2010, pp. 1-2.

a value of over $500 or more was punishable by up to ten years in prison;[20] and aggravated escape was punishable by up to ten years in prison. By agreeing to plead guilty, petitioner received generous concessions: the charge of illegal possession of stolen things was nolle prossed, and he was guaranteed a maximum term of sixty years imprisonment on the remaining charges, less than half of the maximum period of imprisonment he faced if he went to trial.

In summary, petitioner's crimes were extremely serious, the evidence of his guilt was seemingly overwhelming, and he faced a potential term of imprisonment that well exceeded the probable remainder of his natural life. Because his conviction at a trial could be anticipated with some certainty, he lost little by pleading guilty. On the other hand, he gained much: a guaranteed substantial reduction in his potential sentencing exposure. Under these facts, the undersigned finds petitioner's allegation that he would have insisted going to trial totally lacking in credibility.

This conclusion is clearly bolstered by the fact that petitioner's sole complaint about the agreement was that he was barred from appealing his sentences. The state courts rejected the allegation that the possibility of an appeal was an important factor in petitioner's deliberations concerning the plea agreement,[21] and that finding was not unreasonable. Petitioner's own counsel believed that any challenge to the sentences would be futile,[22] and this Court agrees that any appeal would have been a longshot at best. The Louisiana Supreme Court has expressly held that "the trial

---

[20] In 2010, this criminal provision and its penalties were amended; however, at the time petitioner committed the crime in 2006, the penalty was ten years.

[21] State Rec., Vol. III of III, transcript of March 26, 2010, pp. 41-42.

[22] State Rec., Vol. III of III, transcript of March 26, 2010, p. 21.

judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion." State v. Cann, 471 So.2d 701, 703 (La. 1985). Here, petitioner pleaded guilty to attempted first degree murder, a particularly serious offense, with the trial judge expressly noting the egregiousness of the facts in this case:

> I believe Mr. Power's conduct manifested deliberate cruelty to each of these officers and their families when he shot them.
> I believe he knew or should have known that he was creating the risk of death or great bodily harm when he shot them. And I believe he wanted to do that. He used actual violence in the commission of this crime. He committed this crime in order to help his friend and cousin and idol escape.
> This offense resulted in significant permanent physical injuries for the officers. Significant economic loss to the officers both at the time of the incident and their recovery and in the future. And, certainly, significant emotional injury to not only those officers, but their families. He used a dangerous weapon in the commission of the offense. The offense involves multiple victims.[23]

Under these facts, petitioner's sentences were clearly appropriate and not a manifest abuse of discretion. Sentences of forty or fifty years for attempted first degree murder, even for defendants with no significant criminal record, are routinely upheld by Louisiana courts. See, e.g., State v. Laird, 572 So.2d 793, 794-95 (La. App. 4th Cir. 1990); State v. Cotten, 438 So.2d 1156, 1165 (La. App. 1st Cir. 1983). As noted, petitioner pleaded guilty to *two* such offenses. Moreover, as also noted, he additionally pleaded guilty to two other offenses, unauthorized use of a motor vehicle and aggravated escape, with the law expressly requiring that a sentence for the latter conviction run consecutively to any other sentences imposed. La.Rev.Stat.Ann. § 14:110(C)(2).

---

[23] State Rec., Vol. III of III, transcript of November 30, 2007, p. 38.

In light of all of these factors, the trial judge had the discretion to sentence petitioner to a considerably longer period of imprisonment in this case. Instead, although he imposed the maximum sentences on the two counts of attempted first degree murder and the one count of unauthorized use of a motor vehicle, the judge showed petitioner considerable leniency by ordering that those three sentences be served concurrently.[24]

For all of these reasons, it is extremely unlikely that petitioner's sentences, which were imposed pursuant to a beneficial, negotiated plea agreement, would have been vacated on appeal. The Court therefore finds that there is no reasonable probability that petitioner would have rejected the plea agreement and insisted on going to trial solely to preserve his opportunity to appeal his sentences.

In summary, petitioner has failed to demonstrate that the state court's decision rejecting these claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the deferential standards imposed by AEDPA, this Court likewise rejects the claims.

### B. Ineffective Assistance of Counsel

Lastly, to the extent that petitioner is asserting a separate, freestanding ineffective assistance claim based on his counsel's purported misrepresentation that an appeal could be taken to challenge the sentences, that claim also fails. To prevail on such a claim, a petitioner must

---

[24] State Rec., Vol. III of III, transcript of November 30, 2007, p. 41 ("You got the benefit, in the plea, of not being sentenced separately. And, certainly, you looked at and faced far more than the sixty (60) year sentence. And you received the benefit of that by getting the concurrent sentences on Counts 1, 2, and 3.").

demonstrate *both* that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). If a petitioner makes an insufficient showing as to either of the two prongs of inquiry, the court may dispose of the ineffective assistance claim without addressing the other prong. Id.

This Court need not determine whether counsel's performance was deficient because, for the reasons previously discussed, petitioner cannot show that he was prejudiced by that performance. In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995). As already noted, the undersigned finds that there no reasonable probability that petitioner would have rejected the extremely beneficial plea agreement and insisted on going to trial even if he had known that a guilty plea barred an appeal of his sentences.

Therefore, petitioner has failed to demonstrate that the state court's decision rejecting his ineffective assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly,

utilizing the AEDPA's doubly deferential standard applicable to ineffective assistance claims,[25] this Court likewise rejects petitioner's claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Robert Alan Power be **DISMISSED WITH PREJUDICE**.

---

[25] The United States Supreme Court has explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is *any reasonable argument* that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 131 S.Ct. 770, 788 (2011) (citations and quotation marks omitted; emphasis added).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[26]

New Orleans, Louisiana, this thirtieth day of April, 2012.

                                        **SALLY SHUSHAN**
                                        **UNITED STATES MAGISTRATE JUDGE**

---

[26] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.